UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| The United States, for the use and benefit of Mark Cerrone, Inc., ) ) ) Plaintiff, ) ) v. ) ) United States Fire Insurance Company ) 305 Madison Ave. ) Morristown, NJ   07960 ) *and* ) Robert F. Hyland & Sons, LLC ) 277 Winton Rd. Rochester, NY   14610, Defendants. | **VERIFIED COMPLAINT** CIVIL ACTION NO. _____ |

Plaintiff, Mark Cerrone, Inc., by its attorneys, Magavern Magavern Grimm LLP, as and for its complaint against United States Fire Insurance Company and Robert F. Hyland & Sons, LLC, upon information and belief, alleges:

## NATURE OF THE ACTION

1.     This is an action seeking monetary damages, brought by a subcontractor that provided labor and materials, against a contractor and the contractor's surety, pursuant to the Miller Act, 40 U.S.C. § 3133.  This action also seeks monetary damages against the contractor for failing to pay for labor and materials.

## PARTIES

2.      Mark Cerrone, Inc., (hereinafter "MCI") is a corporation organized and existing under the laws of State of New York, maintaining its principal office in County of Niagara, New York.

3.      Defendant United States Fire Insurance Company (hereinafter "The Guarantee Company") is a surety company organized and existing under the laws of State of Delaware, maintaining its principal office in County of Morris, New Jersey.

4.      Defendant Robert F. Hyland & Sons, LLC (hereinafter "Hyland") is a corporation organized and existing under the laws of State of New York, maintaining its principal office in County of Monroe, New York.

## JURISDICTION

5.      This court has subject matter jurisdiction over MCI's claims arising under the Miller Act, 40 U.S.C. § 3133.

## VENUE

6.      Venue is properly in the Western District of New York, pursuant to 40 U.S.C. § 3133(b)(3).

## FACTS GIVING RISE TO CLAIMS

7.    Hyland is a general contractor that entered into a contract with the U.S. Department of Veteran's Affairs (hereinafter "VA"), which is a department of the United States government, in or about October 12, 2023.

8.    Pursuant to the contract aforesaid, Hyland was to construct improvements to buildings and real property owned by the United States government and located at the Veteran's Administration Medical Center in City of Buffalo, County Erie, New York.

9.    The project referred to in the contract aforesaid is named "Demolition and abatement, Building 1, Various Rooms, VAMC, 36C24223C0180" (hereinafter the "Project").

10.    The aforesaid contract between VA and Hyland required Hyland to purchase and maintain a surety bond to protect persons supplying labor and materials on the Project.

11.    On or about October 12, 2023, United States Fire Insurance Company issued a payment bond to Hyland, relating to the Project, in the penal sum of $188,302.  A copy of the bond is annexed hereto as "Exhibit A."

12.    On or about October 31, 2023, Hyland entered in a subcontract with MCI, whereby MCI would provide labor and materials for asbestos abatement and select demolition for the Project, in consideration for which Hyland would pay $132,000 to MCI.  A copy of the

subcontract is annexed hereto as "Exhibit B." The scope of work to be performed by MCI under the subcontract was later adjusted by the parties thereto, and the final subcontract total was $123,833.

13.    MCI faithfully and fully performed its obligations under the subcontract with Hyland and all of MCI's labor and materials for which payment is sought were accepted by the owner of the Project.

14.    The last day that MCI provided labor and materials for the Project was July 25, 2024.

15.    Despite demand by MCI for full payment therefor, Hyland has paid MCI only $81,460 and has failed to pay the balance of $42,373.

### AS AND FOR A FIRST CAUSE OF ACTION
### (MILLER ACT)

16.    Plaintiff repeats each and every allegation contained herein as in paragraphs "1" through "15".

17.    The provisions of the Miller Act apply to the facts stated herein.

18.    Defendant United States Fire Insurance Company is a payment surety of Defendant Hyland, pursuant to the provisions of the Miller Act.

19.    Plaintiff is a "person" protected by the Miller Act.

20.    Plaintiff's claim for damages in the amount of $42,373 is recoverable under the Miller Act.

21.    Based upon the foregoing, there is due and owing from United States Fire Insurance Company to plaintiff the amount of $42,373, together with interest at the legal rate as allowed by law.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

22.    Plaintiff repeats each and every allegation contained herein as paragraphs "1" through "15".

23.    Section 43 of the subcontract between plaintiff and Defendant Hyland provides for final payment when plaintiff's work is fully completed and is satisfactory to the Project owner.

24.    All of plaintiff's work was authorized, satisfactorily performed and accepted by the Project-owner.

25.     Defendant Hyland has breached the subcontract with plaintiff by failing to pay the balance of $42,373.

26.     Based upon the foregoing, there is due and owing from Hyland to plaintiff the amount of $42,373, together with interest at the legal rate as allowed by law.

## AS AND FOR A THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT)

27.     Plaintiff repeats each and every allegation contained herein as paragraphs "1" through "15".

28.     By refusing to pay plaintiff after having accepted plaintiff's work as having been fully and satisfactorily approved, defendant Hyland has been unjustly enriched in the amount of $42,373.

29.     Based upon the foregoing, there is due and owing from defendant Hyland to plaintiff the amount of $42,373, together with interest at the legal rate as allowed by law.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (QUANTUUM MERUIT)

30.    Plaintiff repeats each and every allegation contained herein as paragraphs "1" through "15".

31.    Plaintiff performed work for Hyland for the Project that was reasonably valued in the amount of $123,833, for which plaintiff was paid the amount of $81,460.

32.    Pursuant to the doctrine of quantum meruit, the reasonable value of the work for which plaintiff has not been paid is $42,373.

33.    Based upon the foregoing, there is due and owing from defendant Hyland to plaintiff the amount of $42,373, together with interest at the legal rate as allowed by law.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (THIRD PARTY BENEFICIARY BREACH OF CONTRACT)

34.    Plaintiff repeats each and every allegation contained herein as paragraphs "1" through "15".

35.    The payment bond issued by defendant United States Fire Insurance Company to Hyland was issued to protect subcontractors who provide labor and materials on the Project, such as plaintiff.

36.    Plaintiff is a third-party beneficiary pursuant to the terms and enforcement of the payment bond aforesaid.

37.    Defendant Hyland has failed to pay plaintiff the amount of $42,373.

38.    As surety for Hyland's payment to plaintiff, defendant United States Fire Insurance Company is obligated to pay plaintiff the amount of $42,373.

39.    Based upon the foregoing, there is due and owing from defendant United States Fire Insurance Company to plaintiff the amount of $42,373, together with interest at the legal rate as allowed by law.

WHEREFORE, plaintiff demands judgment over and against defendants, as follows:

a.    on its first cause of action against United States Fire Insurance Company the amount of $42,373, together with interest from September 4, 2024;

b.    on its second cause of action against Hyland, the amount of $42,373, together with interest from September 4, 2024;

c.    on its third cause of action against Hyland, the amount of $42,373, together with interest from September 4, 2024;

d.    on its fourth cause of action against Hyland, the amount of $42,373, together with interest from September 4, 2024;

e.    on its fifth cause of action against United States Fire Insurance Company, the amount of $42,373, together with interest from September 4, 2024;

f.    the costs and disbursements taxed in this action.

DATED:  February 4, 2025                Respectfully submitted,

                                        MAGAVERN MAGAVERN GRIMM LLP

                                        By:  _____
                                        Edward P. Perlman
                                        Attorneys for plaintiff MARK CERRONE, INC.
                                        810 Main Street
                                        Niagara Falls, New York 14301
                                        Tel:  (716) 285-1550
                                        Fax:  (716) 285-1559
                                        Email:  *nperlman@magavern.com*

## VERIFICATION

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NIAGARA    )

George Lodick, being duly sworn, deposes and says that he is the secretary of Mark Cerrone, Inc., plaintiff in this action; that he has read the foregoing complaint and knows the contents thereof; that the same is true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true.

MARK CERRONE, INC.

By: George Lodick
    Secretary

Sworn to before me this
5th day of February, 2025.

Notary Public

LORI A MOUNT
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MO6431735
Qualified in Erie County
Commission Expires 4/18/26

\13451.0061/1224209.doc

10

# EXHIBIT A

Bond No.:  602-137949-4

| **PAYMENT BOND** *(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)* October 12, 2023 | **OMB Control Number: 9000-0045** **Expiration Date: 8/31/2025** |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 1 hour to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | | |
|---|---|---|---|
| Robert F Hyland & Sons LLC 277 North Winton Road Rochester, NY  14610 | ☐ INDIVIDUAL   ☐ PARTNERSHIP   ☐ JOINT VENTURE ☐ CORPORATION   ☒ OTHER *(Specify)* LLC STATE OF INCORPORATION NY | | |

| SURETY(IES) *(Name(s) and business address(es))* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| United States Fire Insurance Company 305 Madison Avenue Morristown, NJ  07960 | MILLION(S) | THOUSAND(S) 188 | HUNDRED(S) 302 | CENTS 00 |
| | CONTRACT DATE 9/20/2023 | CONTRACT NUMBER 36C24223C0180 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| Robert F Hyland & Sons LLC | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. *(Seal)* | 2. *(Seal)* | 3. *(Seal)* | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Donald Padilla, President | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. *(Seal)* | 2. *(Seal)* | |
| NAME(S) *(Typed)* | 1. | 2. | |

| | | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | United States Fire Insurance Company 305 Madison Avenue, Morristown, NJ  07960 | STATE OF INCORPORATION DE | LIABILITY LIMIT $188,302.00 | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Renee A. Manny Attorney-in-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
*Previous edition is NOT usable*

**STANDARD FORM 25A (REV. 8/2016)**
Prescribed by GSA-FAR (48 CFR) 53.228(c)

| | | CORPORATE SURETY(IES) *(Continued)* | | | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

(b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

(c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A** (REV. 8/2016) BACK

**Acknowledgment by Corporation**

STATE OF

COUNTY OF

On this _____ day of_____,_____, before me personally appeared _____, to me known, who being by me duly sworn, did acknowledge and say that (s)he is the _____ of Robert F Hyland & Sons LLC ____, the corporation that executed the foregoing instrument, and acknowledged to me that such corporation executed the same.

In witness whereof, I have hereunto set my hand and affixed my official seal, at my office in the above County, the day and year written above.

_____, Notary Public
State of
County of
My Commission Expires:

**Acknowledgment by Surety**

STATE OF _New York_____

COUNTY OF _Albany_____

On this 12th day of____October___, _2023_, before me personally appeared ___Renee A. Manny___, to me known, who being by me duly sworn, did acknowledge and say that she is the Attorney-in-Fact of United States Fire Insurance Company_____, the corporation that executed the foregoing instrument, and acknowledged to me that such corporation executed the same.

In witness whereof, I have hereunto set my hand and affixed my official seal, at my office in the above County, the day and year written above.

_____, Notary Public
State of _____
County of _____
My Commission Expires: _____

JENNIFER S. VANAT
Notary Public, State of New York
Qualified in Columbia County
Reg # 01VA6135808
Commission Expires Oct. 24, 20__

### POWER OF ATTORNEY
### UNITED STATES FIRE INSURANCE COMPANY
### PRINCIPAL OFFICE - MORRISTOWN, NEW JERSEY

00369

**KNOW ALL MEN BY THESE PRESENTS:** That United States Fire Insurance Company, a corporation duly organized and existing under the laws of the state of Delaware, has made, constituted and appointed, and does hereby make, constitute and appoint:

*Renee A Manny, Christopher G Terzian, Karen A Peters, Kevin J Garrity, Mark C Nickel, David W Cooper,*
*Justin Brewer, Jennifer S Vaunt*

each, its true and lawful Attorney(s)-In-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver: Any and all bonds and undertakings of surety and other documents that the ordinary course of surety business may require, and to bind United States Fire Insurance Company thereby as fully and to the same extent as if such bonds or undertakings had been duly executed and acknowledged by the regularly elected officers of United States Fire Insurance Company at its principal office, in amounts or penalties not exceeding: **Seven Million, Five Hundred Thousand Dollars ($7,500,000).**

This Power of Attorney limits the act of those named therein to the bonds and undertakings specifically named therein, and they have no authority to bind United States Fire Insurance Company except in the manner and to the extent therein stated.

This Power of Attorney is granted pursuant to Article IV of the By-Laws of United States Fire Insurance Company as now in full force and effect, and consistent with Article III thereof, which Articles provide, in pertinent part:

Article IV, Execution of Instruments - Except as the Board of Directors may authorize by resolution, the Chairman of the Board, President, any Vice-President, any Assistant Vice President, the Secretary, or any Assistant Secretary shall have power on behalf of the Corporation:

(a) to execute, affix the corporate seal manually or by facsimile to, acknowledge, verify and deliver any contracts, obligations, instruments and documents whatsoever in connection with its business including, without limiting the foregoing, any bonds, guarantees, undertakings, recognizances, powers of attorney or revocations of any powers of attorney, stipulations, policies of insurance, deeds, leases, mortgages, releases, satisfactions and agency agreements;
(b) to appoint, in writing, one or more persons for any or all of the purposes mentioned in the preceding paragraph (a), including affixing the seal of the Corporation.

Article III, Officers, Section 3.11, Facsimile Signatures. The signature of any officer authorized by the Corporation to sign any bonds, guarantees, undertakings, recognizances, stipulations, powers of attorney or revocations of any powers of attorney and policies of insurance issued by the Corporation may be printed, facsimile, lithographed or otherwise produced. In addition, if and as authorized by the Board of Directors, dividend warrants or checks, or other numerous instruments similar to one another in form, may be signed by the facsimile signature or signatures, lithographed or otherwise produced, of such officer or officers of the Corporation as from time to time may be authorized to sign such instruments on behalf of the Corporation. The Corporation may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Corporation, notwithstanding the fact that he may have ceased to be such at the time when such instruments shall be issued.

**IN WITNESS WHEREOF,** United States Fire Insurance Company has caused these presents to be signed and attested by its appropriate officer and its corporate seal hereunto affixed this 28th day of September, 2021.

**UNITED STATES FIRE INSURANCE COMPANY**



Matthew E. Lubin,  President

State of New Jersey}
County of Morris   }

On this 28th day of September, 2021, before me, a Notary public of the State of New Jersey, came the above named officer of United States Fire Insurance Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of United States Fire Insurance Company thereto by the authority of his office.

MELISSA H. D'ALESSIO
NOTARY PUBLIC OF NEW JERSEY
Commission # 50125833
My Commission Expires 4/7/2025

*Melissa H D'Alessio*
Melissa H. D'Alessio  (Notary Public)

I, the undersigned officer of United States Fire Insurance Company, a Delaware corporation, do hereby certify that the original Power of Attorney of which the foregoing is a full, true and correct copy is still in force and effect and has not been revoked.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the corporate seal of United States Fire Insurance Company on the 12th day of October   20 23



**UNITED STATES FIRE INSURANCE COMPANY**

*Michael C Fay*
Michael C. Fay, Senior Vice President

## UNITED STATES FIRE INSURANCE COMPANY
1209 ORANGE STREET, WILMINGTON, DELAWARE 19801

STATEMENT OF ASSETS, LIABILITIES, SURPLUS AND OTHER FUNDS

AT DECEMBER 31, 2022

### ASSETS

| | |
|---|---:|
| Bonds (Amortized Value) | 1,905,252,232 |
| Preferred Stocks (Market Value) | 114,529,067 |
| Common Stocks (Market Value) | 1,762,084,603 |
| Mortgage Loans (Market Value) | 796,032,009 |
| Cash, Cash Equivalents, and Short Term Investments | 626,020,353 |
| Derivatives | 10,695,142 |
| Other Invested Assets | 337,125,033 |
| Investment Income Due and Accrued | 19,572,352 |
| Premiums and Considerations | 340,327,513 |
| Amounts Recoverable from Reinsurers | 61,688,599 |
| Funds Held by or Deposited with Reinsured Companies | 70,688,033 |
| Net Deferred Tax Asset | 140,619,760 |
| Electronic Data Processing Equipment | 1,507,891 |
| Receivables from Parent, Subsidiaries and Affiliates | 158,857,542 |
| Other Assets | 145,928,507 |
| TOTAL ASSETS | $ 6,490,928,636 |

### LIABILITIES, SURPLUS & OTHER FUNDS

| | |
|---|---:|
| Losses (Reported Losses Net of Reinsurance Ceded and Incurred But Not Reported Losses) | 2,212,036,852 |
| Reinsurance Payable on Paid Losses and Loss Adjustment Expenses | 68,359,436 |
| Loss Adjustment Expenses | 374,380,070 |
| Commissions Payable, Contingent Commissions and Other Similar Charges | 10,899,929 |
| Other Expenses (Excluding Taxes, Licenses and Fees) | 95,863,911 |
| Taxes, Licenses and Fees (Excluding Federal Income Taxes) | 30,559,093 |
| Current Federal and Foreign Income Taxes | 197,142,687 |
| Unearned Premiums | 999,534,655 |
| Advance Premium | 12,896,716 |
| Ceded Reinsurance Premiums Payable | 99,545,135 |
| Funds Held by Company under Reinsurance Treaties | 42,360,469 |
| Amounts Withheld by Company for Account of Others | 133,940,889 |
| Provision for Reinsurance | 2,638,135 |
| Payable to Parent, Subsidiaries and Affiliates | 91,545,650 |
| Other Liabilities | 73,407,186 |
| TOTAL LIABILITIES | $ 4,445,110,813 |
| Common Capital Stock | 18,780,000 |
| Gross Paid In and Contributed Surplus | 1,502,074,940 |
| Unassigned Funds (Surplus) | 524,962,883 |
| Surplus as Regards Policyholders | 2,045,817,823 |
| TOTAL LIABILITIES, SURPLUS & OTHER FUNDS | $ 6,490,928,636 |

I, Carmine Scaglione, Senior Vice President and Controller of UNITED STATES FIRE INSURANCE COMPANY, certify that the foregoing is a fair statement of Assets, Liabilities, Surplus and Other Funds of this Company, at the close of business, December 31, 2022, as reflected by its books and records and as reported in its statement on file with the Insurance Department of the State of Delaware.

IN TESTIMONY WHEREOF, I have set my hand and affixed the seal of the Company, this 23rd day of March, 2023.
UNITED STATES FIRE INSURANCE COMPANY

Bond No. ROBE9-11-23-1

| **BID BOND** (See instructions on reverse) | DATE BOND EXECUTED (Must not be later than bid opening date) 09/11/2023 | OMB Control Number: 9000-0045 Expiration Date: 8/31/2025 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 1 hour to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) Robert F. Hyland & Sons LLC 277 N. Winton Road Rochester, New York 14610 | TYPE OF ORGANIZATION ("X" one) ☐ INDIVIDUAL  ☐ PARTNERSHIP  ☐ JOINT VENTURE ☐ CORPORATION  ☒ OTHER (Specify) LLC STATE OF INCORPORATION New York |
|---|---|

SURETY(IES) (Name and business address)
United States Fire Insurance Company
305 Madison Avenue
Morristown, New Jersey 07962

| | PENAL SUM OF BOND | | | | BID IDENTIFICATION | |
|---|---|---|---|---|---|---|
| PERCENT OF BID PRICE | AMOUNT NOT TO EXCEED | | | | BID DATE 09/15/2023 | INVITATION NUMBER 36C24223B0036 |
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS | | |
| 20 | | | | | FOR (Construction, Supplies or Services) | B-1 Demolition & Abatement of Various Rooms |

OBLIGATION:

We, the Principal and Surety(ies) are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has submitted the bid identified above.

THEREFORE:

The above obligation is void if the Principal - (a) upon acceptance by the Government of the bid identified above, within the period specified therein for acceptance (sixty (60) days if no period is specified), executes the further contractual documents and gives the bond(s) required by the terms of the bid as accepted within the time specified (ten (10) days if no period is specified) after receipt of the forms by the principal; or (b) in the event of failure to execute such further contractual documents and give such bonds, pays the Government for any cost of procuring the work which exceeds the amount of the bid.

Each Surety executing this instrument agrees that its obligation is not impaired by any extension(s) of the time for acceptance of the bid that the Principal may grant to the Government. Notice to the surety(ies) of extension(s) is waived. However, waiver of the notice applies only to extensions aggregating not more than sixty (60) calendar days in addition to the period originally allowed for acceptance of the bid.

WITNESS:

The Principal and Surety(ies) executed this bid bond and affixed their seals on the above date.

Robert F. Hyland & Sons LLC          PRINCIPAL

| | 1. _(Seal)_ | 2. | 3. | | |
|---|---|---|---|---|---|
| SIGNATURE(S) | | | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Donald Padilla, President | 2. | 3. | | |

INDIVIDUAL SURETY(IES)

| | 1. | | 2. (Seal) | |
|---|---|---|---|---|
| SIGNATURE(S) | | | | (Seal) |
| NAME(S) (Typed) | 1. | | 2. | |

CORPORATE SURETY(IES)

| | NAME & ADDRESS | United States Fire Insurance Company 305 Madison Avenue, Morristown, NJ 07962 | STATE OF INCORPORATION Delaware | LIABILITY LIMIT ($) 250,000 | |
|---|---|---|---|---|---|
| SURETY A | SIGNATURE(S) | | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Renee A. Manny    Attorney-In-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

STANDARD FORM 24 (REV. 8/2016)
Prescribed by GSA - FAR (48 CFR) 53.228(a)

| | | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | | | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form is authorized for use when a bid guaranty is required. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. The bond may express penal sum as a percentage of the bid price. In these cases, the bond may state a maximum dollar limitation (e.g., 20% of the bid price but the amount not to exceed _____ dollars).

4. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bond, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

5. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal"; and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

6. Type the name and title of each person signing this bond in the space provided.

7. In its application to negotiated contracts, the terms "bid" and "bidder" shall include "proposal" and "offeror."

**STANDARD FORM 24** (REV. 8/2016) **BACK**

**Acknowledgment by Corporation**

STATE OF

COUNTY OF

On this ____ day of _____, _____, before me personally appeared _____, to me known, who being by me duly sworn, did acknowledge and say that (s)he is the _____ of Robert F Hyland & Sons LLC ____, the corporation that executed the foregoing instrument, and acknowledged to me that such corporation executed the same.

In witness whereof, I have hereunto set my hand and affixed my official seal, at my office in the above County, the day and year written above.

_____
_____, Notary Public
State of
County of
My Commission Expires:

**Acknowledgment by Surety**

STATE OF  New York

COUNTY OF  Albany

On this 11th day of  September ,  2023 , before me personally appeared    Renee A. Manny   , to me known, who being by me duly sworn, did acknowledge and say that she is the Attorney-in-Fact of United States Fire Insurance Company _____, the corporation that executed the foregoing instrument, and acknowledged to me that such corporation executed the same.

In witness whereof, I have hereunto set my hand and affixed my official seal, at my office in the above County, the day and year written above.

_____
_____, Notary Public
State of _____
County of _____
My Commission Expires: _____

KEVIN J. GARRITY
Notary Public, State of New York
Qualified in Albany County
Reg # 01GA4929025
Commission Expires April 25, 20___

**POWER OF ATTORNEY**
**UNITED STATES FIRE INSURANCE COMPANY**
**PRINCIPAL OFFICE - MORRISTOWN, NEW JERSEY**

00369

**KNOW ALL MEN BY THESE PRESENTS**: That United States Fire Insurance Company, a corporation duly organized and existing under the laws of the state of Delaware, has made, constituted and appointed, and does hereby make, constitute and appoint:

*Renee A Manny, Christopher G Terzian, Karen A Peters, Kevin J Garrity, Mark C Nickel, David W Cooper,*
*Justin Brewer, Jennifer S Vanat*

each, its true and lawful Attorney(s)-In-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver: Any and all bonds and undertakings of surety and other documents that the ordinary course of surety business may require, and to bind United States Fire Insurance Company thereby as fully and to the same extent as if such bonds or undertakings had been duly executed and acknowledged by the regularly elected officers of United States Fire Insurance Company at its principal office, in amounts or penalties not exceeding: **Seven Million, Five Hundred Thousand Dollars ($7,500,000).**

This Power of Attorney limits the act of those named therein to the bonds and undertakings specifically named therein, and they have no authority to bind United States Fire Insurance Company except in the manner and to the extent therein stated.

This Power of Attorney is granted pursuant to Article IV of the By-Laws of United States Fire Insurance Company as now in full force and effect, and consistent with Article III thereof, which Articles provide, in pertinent part:

Article IV, Execution of Instruments - Except as the Board of Directors may authorize by resolution, the Chairman of the Board, President, any Vice-President, any Assistant Vice President, the Secretary, or any Assistant Secretary shall have power on behalf of the Corporation:

(a) to execute, affix the corporate seal manually or by facsimile to, acknowledge, verify and deliver any contracts, obligations, instruments and documents whatsoever in connection with its business including, without limiting the foregoing, any bonds, guarantees, undertakings, recognizances, powers of attorney or revocations of any powers of attorney, stipulations, policies of insurance, deeds, leases, mortgages, releases, satisfactions and agency agreements;
(b) to appoint, in writing, one or more persons for any or all of the purposes mentioned in the preceding paragraph (a), including affixing the seal of the Corporation.

Article III, Officers, Section 3.11, Facsimile Signatures. The signature of any officer authorized by the Corporation to sign any bonds, guarantees, undertakings, recognizances, stipulations, powers of attorney or revocations of any powers of attorney and policies of insurance issued by the Corporation may be printed, facsimile, lithographed or otherwise produced. In addition, if and as authorized by the Board of Directors, dividend warrants or checks, or other numerous instruments similar to one another in form, may be signed by the facsimile signature or signatures, lithographed or otherwise produced, of such officer or officers of the Corporation as from time to time may be authorized to sign such instruments on behalf of the Corporation. The Corporation may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Corporation, notwithstanding the fact that he may have ceased to be such at the time when such instruments shall be issued.

**IN WITNESS WHEREOF**, United States Fire Insurance Company has caused these presents to be signed and attested by its appropriate officer and its corporate seal hereunto affixed this 28th day of September, 2021.

**UNITED STATES FIRE INSURANCE COMPANY**



Matthew E. Lubin,  President

State of New Jersey }
County of  Morris   }

On this 28th day of September, 2021, before me, a Notary public of the State of New Jersey, came the above named officer of United States Fire Insurance Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of United States Fire Insurance Company thereto by the authority of his office.

MELISSA H. D'ALESSIO
NOTARY PUBLIC OF NEW JERSEY
Commission # 50125833
My Commission Expires 4/7/2026

Melissa H. D'Alessio   (Notary Public)

I, the undersigned officer of United States Fire Insurance Company, a Delaware corporation, do hereby certify that the original Power of Attorney of which the foregoing is a full, true and correct copy is still in force and effect and has not been revoked.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the corporate seal of United States Fire Insurance Company on the 11th day of  September    2023.

**UNITED STATES FIRE INSURANCE COMPANY**

Michael C. Fay, Senior Vice President

**UNITED STATES FIRE INSURANCE COMPANY**
1209 ORANGE STREET, WILMINGTON, DELAWARE 19801

STATEMENT OF ASSETS, LIABILITIES, SURPLUS AND OTHER FUNDS

AT DECEMBER 31, 2022

## ASSETS

| | |
|---|---:|
| Bonds (Amortized Value) | 1,905,252,232 |
| Preferred Stocks (Market Value) | 114,529,067 |
| Common Stocks (Market Value) | 1,762,084,603 |
| Mortgage Loans (Market Value) | 796,032,009 |
| Cash, Cash Equivalents, and Short Term Investments | 626,020,353 |
| Derivatives | 10,695,142 |
| Other Invested Assets | 337,125,033 |
| Investment Income Due and Accrued | 19,572,352 |
| Premiums and Considerations | 340,327,513 |
| Amounts Recoverable from Reinsurers | 61,688,599 |
| Funds Held by or Deposited with Reinsured Companies | 70,688,033 |
| Net Deferred Tax Asset | 140,619,760 |
| Electronic Data Processing Equipment | 1,507,891 |
| Receivables from Parent, Subsidiaries and Affiliates | 158,857,542 |
| Other Assets | 145,928,507 |
| **TOTAL ASSETS** | **$ 6,490,928,636** |

## LIABILITIES, SURPLUS & OTHER FUNDS

| | |
|---|---:|
| Losses (Reported Losses Net of Reinsurance Ceded and Incurred But Not Reported Losses) | 2,212,036,852 |
| Reinsurance Payable on Paid Losses and Loss Adjustment Expenses | 68,359,436 |
| Loss Adjustment Expenses | 374,380,070 |
| Commissions Payable, Contingent Commissions and Other Similar Charges | 10,899,929 |
| Other Expenses (Excluding Taxes, Licenses and Fees) | 95,863,911 |
| Taxes, Licenses and Fees (Excluding Federal Income Taxes) | 30,559,093 |
| Current Federal and Foreign Income Taxes | 197,142,687 |
| Unearned Premiums | 999,534,655 |
| Advance Premium | 12,896,716 |
| Ceded Reinsurance Premiums Payable | 99,545,135 |
| Funds Held by Company under Reinsurance Treaties | 42,360,469 |
| Amounts Withheld by Company for Account of Others | 133,940,889 |
| Provision for Reinsurance | 2,638,135 |
| Payable to Parent, Subsidiaries and Affiliates | 91,545,650 |
| Other Liabilities | 73,407,186 |
| **TOTAL LIABILITIES** | **$ 4,445,110,813** |
| Common Capital Stock | 18,780,000 |
| Gross Paid In and Contributed Surplus | 1,502,074,940 |
| Unassigned Funds (Surplus) | 524,962,883 |
| Surplus as Regards Policyholders | 2,045,817,823 |
| **TOTAL LIABILITIES, SURPLUS & OTHER FUNDS** | **$ 6,490,928,636** |

I, Carmine Scaglione, Senior Vice President and Controller of UNITED STATES FIRE INSURANCE COMPANY, certify that the foregoing is a fair statement of Assets, Liabilities, Surplus and Other Funds of this Company, at the close of business, December 31, 2022, as reflected by its books and records and as reported in its statement on file with the Insurance Department of the State of Delaware.

IN TESTIMONY WHEREOF, I have set my hand and affixed the seal of the Company, this 23rd day of March, 2023.
UNITED STATES FIRE INSURANCE COMPANY

# EXHIBIT B

**Robert F. Hyland & Sons LLC, Subcontract Agreement**

This Agreement is made as of the ___31st___ day of ___October___ in the year of ___2023___ .

BETWEEN the Contractor: Robert F. Hyland & Sons    And the Subcontractor:

| Robert F. Hyland & Sons, LLC | Mark Cerrone Inc. |
|---|---|
| 277 North Winton Road | P.O. Box 3009 |
| Rochester, NY 14610 | Niagara Falls, NY 14304 |
| | |

The Contractor has entered into a Prime Contract for construction dated ___10/12/2023___ with
The Owner:

| U.S. Department of Veteran Affairs, Idalia Algarin |
|---|
| Network Contracting Office 2 |
| WNY Upstate New York Healthcare System |
| 2875 Union Rd. Suite 3500 |
| Cheektowaga, NY 14227 |

For the following Project:

| Demolition and Abatement; Building 1, Various Rooms, Buffalo VAMC |
|---|
| 36C24223C0180 |

which Contract is hereinafter referred to as the Prime Contract and which provides for the furnishing of labor, materials equipment and services in connection with the construction of the Project. A copy of the Prime Contract, consisting of the Agreement between Owner and Contractor (from which compensation amounts may be deleted) and the other Contract Documents enumerated therein have been and continue to be available to the Subcontractor, upon request.

The Architect for the Project is:
(Name and Address)

| Buffalo VA Engineering |
|---|
| 3495 Bailey Avenue |
| Buffalo, NY 14215 |
| |

The Contractor and the Subcontractor agree as set forth below.

### THE SUBCONTRACT WORK

The Subcontractor, for the Subcontract Sum of ___One Hundred Thirty-Two Thousand Dollars and Zero Cents___
($ _132,000.00_____ ) (or, if blank, for the unit prices specified in Paragraph 38), shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work:

| Provide all labor, Material and Equipment to complete the Asbestos Abatement & Select Demolition scope of work for the Buffalo VA Demo and Abatement Various Rooms Project as per plans, specifications, VA rules, regulations, 2 amendments and Mark Cerrone Inc. Proposal dated 9/15/23. |
|---|

The Work of this Subcontract shall be substantially completed not later than ___3/1/24___ unless extended in writing by the General Contractor, and shall be finally complete as required by the Prime Contract Documents.

1

Robert F. Hyland & Sons LLC, Subcontract Agreement

Time is of the essence. Subcontractor shall be liable for any liquidated or other damages assessed against Contractor by Owner as a consequence of Subcontractor's failure to prosecute its work diligently or to complete it on time.

---

## TERMS AND CONDITIONS

### SCOPE OF WORK

1.      The Contract Documents Consist of this Subcontract, any attachments and all documents comprising the Prime Contract between the Owner and Contractor, which are made a part hereof and are incorporated by reference as if fully set forth. The Subcontractor shall be furnished copies of the Contract Documents upon request. This Subcontractor Agreement represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral.

2.      To the extent that provisions of the Prime Contract apply to the Work of the Subcontractor, the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under the Prime Contract, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under the Prime Contract, has against the Contractor, insofar as applicable to this Subcontract. Where a provision of the Prime Contract is inconsistent with a provision of this Agreement, this Agreement shall govern. Otherwise, the terms of the Prime Contract are incorporated by reference herein.

3. Subcontractor shall perform all work in strict compliance with the Contract Documents and applicable building codes, and to the satisfaction of the Architect, Owner and Contractor. Subcontractor shall be bound to all determinations of the Owner and its representative concerning the Subcontract work to the same extent as Contractor is so bound, and shall promptly complete, repair or replace, at its own expense, any work found not to be compliant.

4. No substitutions shall be made except in strict compliance with the Contract Documents and only after receipt of all required approvals. Requests for substitutions shall be at Subcontractor's expense and not delay the progress of the work of any contractor on the Project. Subcontractor shall not be entitled to additional compensation for the use of any specified product, manufacturer, quality assurance or product grade. Subcontractor shall promptly furnish such certifications, tests and reports as may be required to demonstrate that materials comply with contract requirements.

5. The Subcontractor shall give all required notices, and comply with all laws, ordinances, rules, regulations and orders of public authorities, bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections, necessary for proper execution and completion of the Subcontract Work, the furnishing of which is required of the Contractor by the Prime Contract.

6. The Subcontractor shall comply with all applicable Federal, state and local laws, including without limitation, labor laws, tax laws, social security acts, unemployment compensation acts and workers' or workmen's compensation acts insofar as applicable to the performance of this Subcontract.

### EXECUTION AND PROGRESS OF THE WORK

7. The Subcontractor shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces. Subcontractor shall commence and continue its work at such points and in such sequence as Contractor may direct, and shall furnish sufficient labor and work sufficient hours or shifts so as to assure timely completion of its own work and to enable Contractor and others to complete their work in accordance with all Contract Documents.

8. The Subcontractor shall immediately place all required purchase orders and shall promptly submit Shop Drawings, Product Data, Samples and other submittals required by the Subcontract or Prime Contract Documents in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors. No approval of any submittal shall excuse Subcontractor from any other obligations under this Subcontract or the Prime Contract documents.

2

Robert F. Hyland & Sons LLC, Subcontract Agreement

9. Date of commencement shall be as designated by the Contractor either verbally or in writing. Unless the date of commencement is established by a written notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work.

10. No extension of time will be valid without the Contractor's written consent.

11. Any phase or milestone completion dates specified by Contractor or by the Contract Documents and pertinent to the Subcontract Work shall be binding upon the Subcontractor to the same extent and with the same consequences as the date for substantial completion.

12. The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as requested, including information on the status of materials and equipment which may be in the course of preparation or manufacture.

13.  Contractor shall be entitled, upon written request, to receive promptly from Subcontractor adequate assurance that Subcontractor can and will duly and timely perform its obligations hereunder.  Failure to furnish such assurance satisfactory to Contractor shall be a material breach hereof.

14. The Subcontractor shall pay for materials, equipment and labor used in connection with the performance of this Subcontract promptly as such obligations become due, and in any event, through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.  Contractor may contact Subcontractor's vendors, subcontractors and employees to assure compliance herewith. If Contractor has reason to believe that any obligations incurred in connection with this Subcontract are not being paid when due, Contractor may so notify the Subcontractor and may take any steps Contractor deems necessary to assure that future payments are utilized to pay such obligations including, but not limited to, the issuance of joint checks.  If upon receipt of such notice the Subcontractor does not either supply proof satisfactory to Contractor that no such obligations are owed or post acceptable security indemnifying Owner, Contractor and Contractor's surety against claims for such obligations, then Contractor may withhold from future payments an amount sufficient to protect the Owner, Contractor and Contractor's surety from any and all loss, damage or expense including attorneys fees occasioned by such claims.

15.  If a mechanic's lien is filed by any person in connection with the work of this subcontract, Subcontractor shall obtain discharge thereof within ten days of demand by Contractor or Owner, otherwise Contractor may discharge such lien and charge the cost thereof to the Subcontractor.  Subcontractor shall indemnify Contractor against any costs, liabilities or damages incurred, ~~including attorneys fees~~, as a consequence of any claim of nonpayment by anyone for labor, material, or services furnished in connection with the Subcontract work, and Contractor may back-charge such amounts against payments otherwise due hereunder.

16.  The Subcontractor shall protect its own work and the work of other subcontractors from damage caused by operations under this Subcontract, and shall be liable for and responsible to correct all loss or damage to the Work (not caused by other contractors) occurring at any time prior to final acceptance by the Owner. In addition, Subcontractor shall sequence, coordinate and protect its work so ~~as to prevent weather damage~~ and water intrusion (as well as attendant mold growth) to its own work and materials and the work and materials of others. Subcontractor shall be responsible for all costs, including testing, remediation and repair, caused by any breach hereunder, and shall defend and indemnify Contractor against all claims and liabilities arising from any breach except to the extent caused by Contractor's own negligence.

17. The Subcontractor shall cooperate with the Contractor, other Subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work.  The Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if reasonably required, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

3

Robert F. Hyland & Sons LLC, Subcontract Agreement

18.  The Subcontractor agrees that in the performance of the work required under this Subcontract, only such labor will be employed as will not delay or interfere with the speedy and lawful progress of the Project and as will work in harmony with all other workers on the construction site or engaged in the Project. Subcontractor shall continue with the prompt and diligent performance of the work hereunder notwithstanding the occurrence of any labor dispute at the site of construction.  Subcontractor will indemnify Contractor from and against any cost, liability or damage, including attorneys fees, occasioned by its failure to comply with the requirements of this paragraph, and this obligation shall not limit Contractor's other rights or remedies for breach under this Agreement.

19.  Any Subcontractor work completed that does not gain the approval or acceptance of the Owner shall be corrected satisfactorily by the Subcontractor at no cost to the Owner or General Contractor.

20.  Subcontractor employee wages and benefits shall be paid in strict accordance with applicable State and Federal requirements concerning prevailing wages, benefits, and working conditions, and in accordance with applicable collective bargaining agreements (if any).

21.  The Subcontractor shall cooperate with any testing agency engaged by the Contractor and/or Owner to perform services in connection with the material furnished and work performed pursuant to the terms of this Subcontract. The Subcontractor shall provide necessary samples for testing at its sole cost and expense.

22.  If the Subcontractor defaults or neglects to carry out the Work, or any of its other obligations hereunder, in accordance with this Agreement and fails within two working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor, may, without further notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the costs thereof, including overhead and attorneys fees, from the payments then or thereafter due the Subcontractor.

## SAFETY AND CLEANUP

23.  The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures required by the Prime Contract or initiated by the Contractor, and with applicable laws, ordinances, rules, regulations, standards and orders of public authorities for the safety of persons or property. Subcontractor shall comply with any applicable site-specific safety program.  Subcontractor agrees to develop and execute its own Health and Safety Plan specific to this project, and to hold "Tool Box Safety Meetings" for its employees as frequently as circumstances require.  The Subcontractor shall report to the Contractor in writing within three days any accident, incident or injury to an employee, agent of the Subcontractor or any other individual(s), which occurred at the site.

24.  If hazardous substances of a type of which an employer is required by law to notify its employees are or will be brought onto the site by the Subcontractor, or anyone directly or indirectly employed by it, the Subcontractor shall, prior to exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.  Subcontractor shall furnish or make available, as required by law, material safety data sheets for all hazardous substances to which any person performing subcontract work may be exposed, and shall indemnify Contractor against any damage or expense, including attorneys fees, incurred as a consequence of any breach hereof.

25.  The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract.  Contractor may, upon 24 hours notice, remedy any failure to perform hereunder and may back-charge Subcontractor for the costs thereof.

## WARRANTY

26.  The Subcontractor warrants to the Owner and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform with the requirements of the Subcontract Documents.  Work not conforming to these

4

Robert F. Hyland & Sons LLC, Subcontract Agreement

requirements, including substitutions not properly approved and authorized, may be considered defective. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract or Prime Contract Documents.

27. The Subcontractor guarantees all workmanship and materials to the extent, and for such period, as is required of Contractor by the Prime Contract Documents; and if not otherwise specified, for a period of one year from final completion and acceptance of the entire Project. Subcontractor shall furnish a separate certificate of guaranty if required by the Prime Contract Documents, and Contractor is hereby authorized to issue such certificate on Subcontractor's behalf should Subcontractor fail to do so promptly itself.

## INDEMNIFICATION AND INSURANCE

28. To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor and Owner, and the agents and employees of either of them, from and against liabilities, claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of, or resulting from performance of, the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself) including loss of use resulting there from, except that nothing herein shall obligate Subcontractor to indemnify Owner or Contractor against such party's own negligence. This obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity, which may otherwise exist at law.

29. To the fullest extent permitted by law, the Subcontractor agrees to indemnify and hold harmless the Contractor, and Owner and their agents and employees from and against all liabilities, claims, damages, losses, expenses, including but not limited to attorney's fees, court awards, OSHA penalties, or any and all other awards and expenses arising out of or resulting from the performance or non-performance of the Subcontractor's work under this Subcontract or out of any failure to execute reasonable or required safety measures, except that nothing herein shall obligate Subcontractor to indemnify Owner or Contractor against their own negligence.

30. Prior to commencement of the work, the Subcontractor shall procure and maintain at its own expense and from insurers acceptable to Contractor, such insurance policies as will fully protect Subcontractor, Contractor and Owner from all claims for injuries or damages, including attorneys' fees, by whomever caused, arising out of the performance of the Subcontract Work, whether before or after its completion. Subcontractor's insurance carriers shall be A (minus) rated or better. Subcontractor shall also maintain any other insurance required by the Prime Contract documents, and in any event shall maintain the following coverages:

1) Commercial General Liability (CGL) with limits of insurance not less than $1,000,000 each occurrence and $2,000,000 annual aggregate per project. (Contractor may, at its sole election exercised in writing, accept instead an Owner's and Contractor's Protective Liability Policy specific to the project.) In addition,
    A) CGL coverage shall be written on ISO Occurrence form CG00 01 (10/93) or a substitute form providing equivalent coverage and shall cover liability arising from premises and operations, independent contractors, products-completed operations and personal and advertising injury and liability assumed under an insured contract (including the tort liability of another assumed in a business contract).
    B) Contractor, Owner and all other parties required by Prime Contract shall be included as additional insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 (11/85) or both CG 20 10 (10/01) and CG 20 37 (10/01) or an equivalent coverage to the additional insured. This insurance for the additional insured shall be as broad as the coverage provided for the named insured Subcontractor. It shall apply as **primary insurance on a non-contributing** basis before any other insurance or self-insurance, including any deductible, maintained by or provided to, the additional insured.
    C) The Commercial General Liability aggregate should apply on a per project basis using ISO form CG2503 (11/85) or its equivalent.
    D) There shall be no exclusion or modification of the Subcontractor's CGL policy arising from pollution, explosion, collapse, underground property damage or work performed by subcontractors.

5

Robert F. Hyland & Sons LLC, Subcontract Agreement

    E) A Waiver of Subrogation shall be included in favor of Robert F. Hyland & Sons LLC, the Owner, and any other parties noted in the subcontract documents and their respective officers, directors, employees, and agents.

    F) Subcontractor shall maintain CGL coverage for itself and all additional insureds without interruption for the duration of the project until final acceptance by the owner and shall maintain completed operations coverage for itself and each additional insured for at least 5 years after completion and final acceptance of the work.

2) Automobile Liability

    A) Business auto liability with limits not less than $1,000,000 each accident.

    B) Business auto coverage must include coverage for the liability arising out of the use of all owned, leased hired and non-owned automobiles.

3) Commercial Umbrella/Excess

    A) Umbrella/excess liability limits of no less than $3,000,000.

    B) Additional insured on a primary and non-contributory basis including Robert F. Hyland, the Owner, and any other party noted in the subcontract documents and their respective officers, directors, employees, and agents.

    C) A Waiver of Subrogation shall be included in favor of Robert F. Hyland & Sons LLC, the Owner, and any other parties noted in the subcontract documents and their respective officers, directors, employees, and agents.

4) Workers Compensation and Employers Liability

    A) Where applicable, the Maritime Coverage Endorsement shall be attached to the policy.

    B) Where applicable, the Longshore and Harborworkers Compensation Act endorsement shall be attached to the policy.

    C) Workers Compensation coverage will be written to include all employees, including all executive officers.

    D) A Waiver of Subrogation shall be included under the Worker's Compensation Coverage in favor of Robert F. Hyland & Sons LLC, the Owner, and any other parties noted in the subcontract documents and their respective officers, directors, employees, and agents.

**Robert F. Hyland & Sons LLC., Owner, and Any Other Parties Noted in the Subcontract Documents shall be named as additional insured on all of these policies, including the coverage for ongoing and completed operations, except Worker's Compensation**. All such policies shall provide that they will not be canceled, allowed to expire or restrictively modified without thirty (30) days' prior written notice to Contractor. Contractor shall be entitled, upon request at any time, to a certified copy of Subcontractor's insurance policies for the period of time in which Subcontractor performed or is performing work for Contractor. In the event that Subcontractor fails to obtain or maintain any required insurance, the Contractor may purchase such insurance and back-charge the expenses thereof to the Subcontract Amount, or may terminate this Subcontract.

### CHANGES IN THE WORK

31. The Owner may make changes in the Work by issuing modifications to the Prime Contract. Upon receipt of such a modification issued subsequent to the execution of this Subcontract, the Contractor shall promptly notify the Subcontractor of the modification. Unless otherwise directed by the Contractor in writing, the Subcontractor shall not thereafter order materials or perform Work, which would be inconsistent with the changes made by the modifications to the Prime Contract.

32. The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Owner modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and Time being adjusted accordingly only as provided by the Prime

6

Robert F. Hyland & Sons LLC, Subcontract Agreement

Contract. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor in writing any claim for adjustment to the Subcontract Sum or time of completion for such revised work in a manner consistent with requirements of the Contract Documents. Subcontractor shall diligently proceed with all Subcontract Work, including any changed ~~or disputed~~ work directed in writing, ~~notwithstanding that an outstanding change order request, claim or protest with respect to such work is pending or unresolved.~~

33. Subcontractor shall be bound to the terms of the Prime Contract relating to changes, changed conditions, extra work, substitutions, Owner-furnished property, contract suspension and termination, claims and disputes and shall give to Contractor immediate written notice of any claim as required by the Prime Contract documents but in no event any later than three days from the event giving rise to the claim. In addition, Subcontractor shall, within five days of receiving a direction or encountering a condition it regards as a change, alteration or extra work, submit to Contractor a written cost or credit proposal; otherwise Subcontractor shall be bound by such cost increase or credit as Contractor is able to obtain from Owner. Subcontractor waives any claim against Contractor for compensation or equitable adjustment for any claims, changes or extra work except to the extent the same is allowed and paid to Contractor by the Owner. In no event, shall Contractor be liable to Subcontractor for any damages for delays, disruptions or interference with the Work. Contractor shall cooperate with Subcontractor in submitting claims or requested changes to the Owner with respect to subcontract work but this shall not be interpreted as an attempt to create any direct contractual relationship between Subcontractor and Owner. ~~All costs, including attorneys fees, incurred by Contractor~~ in any formal or informal claim proceeding for the benefit of Subcontractor ~~shall be born solely by Subcontractor.~~ No change or extra work ordered by either Owner or Contractor shall invalidate any bond or bonds to be furnished by Subcontractor.

### TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT

34. If Subcontractor fails to commence and diligently continue to cure any default within two (2) days after written notice to cure, or if Subcontractor shall be unable to pay its obligations as they mature, or if its property comes into the possession of a receiver, trustee or assignee, or if Subcontractor abandons its obligations hereunder, then Contractor may give a three-day notice of termination. If after three days Subcontractor has not satisfactorily cured the condition giving rise to such notice, then Contractor may immediately terminate this Subcontract and take possession of all materials, equipment, tools, etc. to finish the work required hereunder. Contractor may back-charge all consequent costs and damages, including attorneys fees, against the Subcontract Amount. If the unpaid balance due to the Subcontractor under this Subcontract shall exceed the expense of completing the project and all the costs attributable to such completion, including a reasonable allowance for Contractor's overhead as well as court costs and attorney fees, such excess shall be paid to the Subcontractor when the project is complete and final payment is received from the Owner. If such expense and cost exceeds the unpaid balance, Subcontractor shall pay the difference to Contractor as the excess is incurred.

35. Contractor may, without cause, suspend all or any portion of the Subcontract Work or terminate the Subcontract, whether because of similar action by the Owner or for Contractor's convenience. If Contractor makes such an election due to similar action by the Owner, the Subcontractor's remedies shall be limited to those available to Contractor from Owner under the Prime Contract documents. Otherwise, in the case of termination for convenience only, Subcontractor shall be entitled to ~~the lesser of the scheduled value or reasonable value of work performed but not to include overhead or profit for uncompleted work.~~

36. The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when the Contractor requests such notification.

### PAYMENT

37. Unless Subcontractor's payment is to be determined on the basis of unit prices, the total sum to which Subcontractor will be entitled upon full performance of the Subcontract Work shall be the amount stated on the face of this Subcontract, subject to additions and deductions as provided in the Subcontract Documents including any legitimate back-charges. Subcontractor agrees such amount is inclusive of all applicable ~~seaffolding, hoisting, tests~~

7

Robert F. Hyland & Sons LLC, Subcontract Agreement

~~inspections,~~ permits, implements, equipment, transportation, cartage, bonding, guarantees, insurance, taxes and future wage and price increases unless otherwise provided in this Subcontract.
Unit prices, if any, are as follows:

NA.

38.  Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to Applications for Payment submitted by the Contractor to the Owner, and Certificates for Payment issued by the Owner, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor only to the extent that, and with such frequency as, Contractor receives such payments from the Owner. Receipt of such payments from the Owner shall be a condition precedent to Contractor's obligation to make progress payments hereunder.

39.  The timing, format and documentation of Subcontractor applications for payment shall be consistent with the requirements of the Prime Contract Documents, and must be submitted to Contractor at least one week in advance of Contractor's deadline for submitting payment applications to the Owner.

40.  The Contractor shall pay the Subcontractor any progress payments less ~~10%~~ retainage and less any amount necessary to satisfy any claims or liens against Subcontractor that have not been suitably discharged, within thirty days after the Contractor receives payment from the Owner; provided that if Subcontractor is indebted to Contractor or anyone else for cash advances, labor, supplies, materials, equipment, rental or other proper charges and/or back-charges against the work a reasonable amount for such indebtedness may be deducted from any payment or payments to be made under this provision; and provided further that Contractor may withhold release of any progress payment to the extent that Subcontractor is in default of any of the terms and conditions of this Subcontract Agreement.  ~~Subcontractor agrees that Contractor shall be entitled to a 2 percent discount against any approved payment applications paid within fourteen days of Contractor's receipt of payment from the Owner.~~

41.  If an application for payment (complete as to form, content and documentation) is received by the Contractor after the appropriate application date, the Subcontractor's work covered by it shall be included by the Contractor in the next Application for Payment submitted to the Owner.

42.  Each application for payment shall be based upon a Schedule of Values approved in advance by the Contractor. Estimates, quantities and calculations made by Owner's representative as to the amount of work performed shall be conclusive and binding upon Subcontractor to the same extent as they are as to Contractor.

43.  Final payment, constituting retainage and any other unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Contract Documents, the Owner has issued a Certificate for Payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. Before issuance of the final payment, the Subcontractor shall submit evidence satisfactory to the Contractor that all payrolls and benefit obligations, bills for materials and equipment, and all indebtedness connected with the Subcontractor's Work have been satisfied.

44.  In addition to any other rights hereunder, Contractor may withhold any payment otherwise due to Subcontractor to the extent reasonably required (a) to remedy defective work not corrected, (b) to assure completion of unfinished Subcontract Work, (c) to assure timely completion of Subcontractor's remaining work, or to secure any potential damage to Contractor due to delay in the progress of Subcontractor's work, (d) to secure any claims made with regard to Subcontractor's Work by any person including the Owner, any supplier of labor, material or equipment to Subcontractor or any employee benefit fund.

Robert F. Hyland & Sons LLC, Subcontract Agreement

## MISCELLANEOUS

45.  Subcontractor may not commence any work without first furnishing the following:

      (i)      Proof satisfactory to Contractor that all required insurances are in place.

      (ii)      Material safety data sheets, as required by State or Federal Law, for all hazardous substances to which any person performing the subcontract work may be exposed in the course of such work and/or which subcontractor reasonably expects to be brought on to the work site.

46.  Subcontractor shall not be entitled to any payments unless and until it furnishes, and keeps current, in forms satisfactory to Contractor, the following:

      (i)      A fully executed copy of this Subcontract Agreement.

      (ii)      For all contracts involving public work a verified statement from the Subcontractor and each of its first and second tier sub-subcontractors, in compliance with New York State Labor Law §220-a, attesting that the Subcontractor and each sub-subcontractor has received and reviewed a copy of the schedule of wages and supplements specified in the Prime Contract Documents (or any applicable schedule subsequently issued) and agreeing that it will pay the applicable prevailing wages and supplements specified therein.

      (iii)      For contracts involving public work, weekly certified payrolls as requested by Contractor.

      (iv)      To the extent that union-affiliated labor has been employed, verification satisfactory to Contractor that all benefits have been paid.

      (v)      All reports, forms, certifications and other records required by the Contract Documents, by the Contractor or by law, with such frequency as is specified or as requested by Contractor.

47.  Performance Bond and Payment Bond (if the Subcontractor is to furnish bonds insert the specific requirements here).

NA.

48.  Nothing in this Subcontract Agreement shall be construed to create any third-party beneficiary rights in any person.

49.  Subcontractor agrees to comply with any applicable EEO/Affirmative Action Policy of Contractor and/or Owner and agrees to comply therewith in connection with the work of this subcontract. Subcontractor also agrees to comply with all non-discrimination, equal employment opportunity and affirmative action (including minority and women utilization) obligations imposed by law or by the Contract Documents.

50. Any litigation or other dispute resolution procedures arising out of or pertaining to this Subcontract Agreement shall be venued in the State of New York, County of Monroe. This Contract, and its enforcement, shall be construed and governed by the law of the State of New York. Should Contractor become involved in arbitration or other dispute resolution proceeding with any other person relating to the work of this Subcontract then, upon receiving notice thereof and an opportunity to participate therein, Subcontractor shall be bound by any disposition thereof to the same extent as Contractor shall be bound.

51.  No attempted modifications of any printed term hereon shall be effective unless initialed by an officer of Contractor.

9

Robert F. Hyland & Sons LLC, Subcontract Agreement

This agreement entered into as of the day and year first written above.                    RFH 456-1

CONTRACTOR: Robert F. Hyland & Sons, LLC          SUBCONTRACTOR:  Mark Cerrone, Inc.

Rochester, NY                                      2368 Maryland Avenue, Niagara Falls, NY 14305

_____                   _____
(Signature)                                        (Signature)

Donald Padilla, Owner/Pres.                        GEORGE CHVRAKOS, PRESIDENT
(Printed name and title)                           (Printed name and title)

11/21/23                                           11/16/2023
(Date)                                             (Date)

                                                   Purchase Order#  456-1
                                                   _____

10

Exhibit A

# MARK CERRONE INC.

**GENERAL SITE CONTRACTORS**

Telephone – (716) 282-5244        Facsimile – (716) 282-5245        E-Mail – Info@MarkCerrone.com

**September 15, 2023**

RE:    ~~Proposal~~ **Buffalo VA Hospital - MCI Estimate #D23-229**
*Asbestos Abatement & Select Demolition (Various Rooms)*

Mark Cerrone, Inc. is pleased to provide you with the following quotation for your review and acceptance.

MCI will provide all supervision, labor, equipment, material, disposal with transportation, MCI standard insurance, OSHA required personal air monitoring, NYS DOL notification fees (if required) and documentation necessary to complete the following scope of work. All jobsite labor per this proposal has been figured at Union/ NYS prevailing labor wage rates. **We Acknowledged addendums 1-2.**

**Base Bid: Asbestos Abatement & Select Demolition** of the materials as listed in the project specifications for work shown on the following project drawings: **Building 1: Basement, First floor, Third floor, Sixth floor and Ninth floor.** Rooms 103-2, 314-B, 611-C, 614C, 929D, 929D1, B46 X2-2, Starbucks 1st floor lobby and room 101-3.

**Base Bid Price:** The above-listed work can be completed for the lump sum of: *ONE HUNDRED THIRTY-TWO THOUSAND DOLLARS AND ZERO CENTS ($132,000.).*

The above pricing is subject to the following exclusions and conditions:

1. Any agreement shall include exclusions outlined in this proposal.
2. Anything outside the above scope of work is excluded, any work that is shown on drawings other than what is indicated and specifically listed above that you would like to be included must be brought to our attention and we will provide separate pricing as requested.
3. Our scope does not include new, patch, infill, prepare, repair, paint, replace, enclose, cover, cap, store, toothing, engineering, and layouts. (Construction barriers/ board ups / protections are excluded from our scope).
4. Shoring is excluded from our scope.
5. MEP removals are excluded from this proposal. Others provide, make safe, connect/disconnect of MEP's and/or provide temporary utilities. MEP openings and coring are excluded.
6. No roof work or work at roof level is included in our proposal.
7. Vacating personnel and loose contents from work areas is excluded from our scope.
8. GC to provide a location for our dumpsters as near the building work areas as possible.
9. Any overtime that may be requested for our work is not included in this proposal and will require additional compensation where or if requested.
10. All local, State and Federal regulations, rules and codes will be strictly adhered to.
11. MCI will not accept back charges against its account without prior authorization by an official of this company. All claims for any back charges must be presented within 48 hours of occurrence.
12. The Owner is responsible for securing third-party area air monitoring.
13. The owner is to supply potable water and adequate 110v electric.

---

*Mailing Address*
P.O. Box 3009
Niagara Falls, NY 14304

*Physical Address*
2368 Maryland Avenue
Niagara Falls, NY 14305

*Safety and Quality First*

14. Applicable taxes, if any, are not included in the above quote. This project is tax exempt, please provide a certificate of exemption.
15. Bonding is not included.
16. Payment terms are net 30 days. Interest is at 1.5% per month.
17. MCI standard insurance is included, this does not include OCP, if required this must be brought to our attention to price accordingly.
18. Unless specially listed in this proposal all alternates, allowances and unit prices are excluded.
19. Salvaging items on our part shall include setting aside in proximity where items are removed, this does not include packing, moving or storing/ storage.

As always, we thank you for the opportunity to bid on this work. Please call should you have questions or concerns.

Sincerely,

*Paul G. Scheuer*

Paul G. Scheuer, (716) 280-1914

Mark Cerrone, Inc

# Contract Billings and Receipts

| Contract: 23-1202-   Demo & Abatement_Building 1_Various Rooms | | |
|---|---|---|
| **Original Contract Value:** | 132,000.00 | |
| **Current Contract Value:** | 118,401.00 | |
| **Balance Left to Bill:** | 0.00 | |
| **Bill Type:** | Lump Sum - Projected | |
| **Project Manager:** | Tracy Maggard | |

| | | |
|---|---|---|
| **Contract Status:** | Open | |
| **Percent Complete:** | 100.00% | |
| **PendingChange Orders:** | 5,432.37 | |
| **Unrecognized Overruns:** | 0.00 | |
| **Project Engineer:** | Melissa Kunes | |
| **Billing Admin:** | Lori Mount | |

**Customer #  10600    Robert F. Hyland & Sons,LLC (RFH)**

## Billings

| | | | Contract Billed | Retainage | Tax | Current Due |
|---|---|---|---|---|---|---|
| Invoice: 25654 | 12/26/23 | 23-1202 App #1 Dec 2023 | 56,975.00 | -2,848.75 | 0.00 | 54,126.25 |
| Invoice: 25791 | 01/22/24 | 23-1202 App #2 Jan 2024 | 10,795.00 | -539.75 | 0.00 | 10,255.25 |
| Invoice: 26341 | 05/13/24 | 23-1202 App #3 May 2024 | 17,977.50 | -898.88 | 0.00 | 17,078.62 |
| Invoice: 26680 | 07/12/24 | 23-1202 App #4 June 2024 | 32,653.50 | -1,632.68 | 0.00 | 31,020.82 |
| Invoice: 26790 | 08/05/24 | 23-1202 App #5 Retention | 0.00 | 0.00 | 0.00 | 0.00 |
| Invoice: 26790 | 08/05/24 | Released Retainage | 0.00 | 5,920.06 | 0.00 | 5,920.06 |
| **Total Billings :** | | | **118,401.00** | **0.00** | **0.00** | **118,401.00** |

## Receipts

| | | | | | | |
|---|---|---|---|---|---|---|
| **Total for: Check # 1641** | 03/12/24 | **Trans # 18** | | | | -54,126.25 |
| | | Invoice:25654 | 23-1202 App #1 Dec 2023 | | | -54,126.25 |
| **Total for: Check # 1662** | 04/05/24 | **Trans # 21** | | | | -10,255.25 |
| | | Invoice:25791 | 23-1202 App #2 Jan 2024 | | | -10,255.25 |
| **Total for: Check # 1711** | 08/29/24 | **Trans # 315** | | | | -17,078.62 |
| | | Invoice:26341 | 23-1202 App #3 May 2024 | | | -17,078.62 |
| **Total Receipts:** | | | -81,460.12 | | | -81,460.12 |

**Current Balance Remaining:23-1202-**          36,940.88

| **Grand Totals** | Contract Billed | Retainage | Tax | Current Due |
|---|---|---|---|---|
| | 118,401.00 | 0.00 | 0.00 | 118,401.00 |

| | |
|---|---|
| Total Receipts | -81,460.12 |
| Total Balance Remaining | 36,940.88 |

## Unposted Invoices

| Contract | Bill # | BillMonth | InvDate | Invoice | InvTotal | InvStatus |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | **Invoice Total:** | | | |

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mark Cerrone, Inc.

**DEFENDANTS**

U.S. Fire Insurance Company
Robert F. Hyland & Sons, LLC

(b) County of Residence of First Listed Plaintiff   Niagara
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Morris, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Edward P. Perlman, Magavern Magavern Grimm LLP
810 Main Street, Niagara Falls, New York 14301
(716) 285-1550

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | | PTF | DEF |
|---|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☒ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
40 U.S.C. § 3133

Brief description of cause:
**Damages against surety under the Miller Act**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $ 36,941.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   Feb. 7, 2025

SIGNATURE OF ATTORNEY OF RECORD   *E. Perlman*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of New York

| | |
|---|---|
| The United States, for the use and benefit of Mark Cerrone, Inc. <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> United States Fire Insurance Company <br> and <br> Robert F. Hyland & Sons, LLC <br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  United States Fire Insurance Company
305 Madison Ave.
Morristown, NJ   07960

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Edward P. Perlman
MAGAVERN MAGAVERN GRIMM LLP
Attorneys for plaintiff MARK CERRONE, INC.
810 Main Street
Niagara Falls, New York 14301

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                      *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*




My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of New York

<table>
<tr><td>The United States, for the use and benefit of<br>Mark Cerrone, Inc.<br><br>_____<br><i>Plaintiff(s)</i><br><br>v.<br><br>United States Fire Insurance Company<br>and<br>Robert F. Hyland & Sons, LLC<br>_____<br><i>Defendant(s)</i></td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Civil Action No.</td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Robert F. Hyland & Sons, LLC
277 Wiinton Rd.
Rochester, NY   14610

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Edward P. Perlman
MAGAVERN MAGAVERN GRIMM LLP
Attorneys for plaintiff MARK CERRONE, INC.
810 Main Street
Niagara Falls, New York 14301

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____            _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc: